### 35759. MOTOR CONVOY, INC. *v.* MOORE.

Decided July 11, 1955—Rehearing denied July 25, 1955.

*Nall, Sterne, Miller, Cadenhead & Dennis*, for plaintiff in error.
*John L. Westmoreland, John L. Westmoreland, Jr.*, contra.

GARDNER, P. J. ■ In the general grounds the verdict is attacked as being contrary to law because of being excessive. The defendant abandons the general grounds upon the claim that the verdict is excessive. Special ground 1 assigns error on the ground that the verdict is grossly excessive. Therefore, we will discuss together the question as to whether or not the verdict is excessive as claimed in the general grounds and in special ground 1. Thus it is submitted that the jury were authorized to find, under the evidence, that the defendant was negligent. Touching this issue Dr. Franklin Miles, the neurosurgeon, testified to the effect that when he saw the plaintiff on September 25, 1953, at Crawford Long Hospital, the defendant had a "laceration and gash" about three inches over his forehead and he had a black eye; that the X-ray showed the plaintiff had suffered a depressed fracture of the frontal bone in the middle of the forehead, depressed and pushed downward about one-half of an inch; that it was a compound, commutated fracture badly displaced and the brain cavity was exposed; that he performed an operation on the plaintiff and bored small holes in the plaintiff's skull to separate the portions of the broken skull by pushing away the lining (known as the dura) in order to "bite off" the pieces of bone with wire pliers; that the hole which had been knocked in the plaintiff's skull was in size somewhere between a half dollar and a silver dollar; that a second operation was performed in December some three months after the first operation and a duralumin plate was placed in his skull; that the plaintiff will have to wear the metal plate

in his head for the rest of his life; that witness does not know anything that can be done about the scars that plaintiff has; that in his opinion there is a 5% chance of plaintiff having convulsions in the future and that in his opinion the plaintiff had a moderate brain concussion.

The plaintiff's wife testified that her husband was in very good health prior to the injuries; that at the time she saw her husband after he had been injured, he was suffering from pain, and after he returned home, after being in the hospital for a week, he appeared to be quite nervous and could not do anything where he might bump his head and could not pick up his child, and that he would have severe headaches and would be nervous and sick; that at the present time, he does not engage in outside activities as much as he did and he has a large scar across his forehead and across the top of his head.

The plaintiff testified substantially that he was 29 years old and in the collision he was knocked unconscious and was in a bad state of shock; that from the scene of the collision he was carried to Grady Hospital in the ambulance, where shots were given to him to relieve the pain; that he was transferred to Crawford Long Hospital where Dr. Franklin Miles and Dr. Simpson, under a general anaesthetic, operated on his head and skull and removed the cracked and crushed bones in his forehead; that his head was dented in, the bone itself was crushed in and the bone mashed in from the skull; that he had a gash on his forehead approximately two inches long entirely through the skin; that he had a black eye; that his chest was cut pretty badly from the glass and he had bruises on his left leg and bruises all over his body; that he was confined at Crawford Long Hospital for one week for the first operation and was confined at home for an additional week before he was able to return to work; that after he returned to work he was not able to work regularly; that in December an operation was performed on him under a general anaesthetic, his head and the skin across the top of his forehead at the hairline was cut entirely across from one side of his head to the other a distance of approximately 8 or 10 inches; that his skin was cut and laid back and a metal plate inserted in his head; that the appearance of his head and the scars caused him considerable embarrassment among the people that he worked with,

and still causes him embarrassment; that he was confined at the Crawford Long Hospital for an additional week before he was able to return to work.

Code § 105-2015, dealing with excessive verdicts, reads: "The question of damages being one for the jury, the court should not interfere, unless the damages are either so small or so excessive as to justify the inference of gross mistake or undue bias." This court, in *Atlantic Coast Line R. Co.* v. *Wells,* 78 *Ga. App.* 859 (52 S. E. 2d 496), dealt fully with a case similar to the case at bar and therein approved a verdict of $37,800 as not being excessive. We can not agree with counsel for the defendant that the verdict rendered is prejudicial, biased or mistaken, and is, therefore excessive. There are many decisions on this issue which we might cite, and we might say much concerning such decisions, but in our opinion this would be of no avail. There is no merit in this contention.

■ Special ground 2 complains because the court failed to charge the jury without a request as follows: "Before a plaintiff may be entitled to recover damages on account of the alleged negligence of another, it must appear from the evidence that such plaintiff was in the exercise of ordinary care for his own safety."

Special ground 3 complains because the court failed to charge the jury, without a request, as follows: "If, in considering the evidence, you should reach the conclusion that both the plaintiff and the defendant were negligent and that the negligence of each joined in proximately causing the occurrence complained of, then in that event, gentlemen, you should determine the amount of negligence attributable to each party. If you should find that the plaintiff's negligence equalled or exceeded that of the defendant, if it were negligent, then in that event the plaintiff would not be entitled to recover. On the other hand, if you should determine that both the plaintiff and defendant were guilty of negligence which joined in proximately causing the occurrence complained of, and that the negligence of the defendant was greater than that of the plaintiff, then in that event the plaintiff would be entitled to recover, but the amount of his recovery in such event should be reduced in proportion to the negligence attributable to the plaintiff."

\ We will deal with special grounds 2 and 3 together. The errors

assigned on these grounds are the same and read as follows: "(a) An issue was made by the pleadings as to whether the plaintiff was in the exercise of ordinary care for his own safety. (b) An issue was made by the evidence as to whether the plaintiff was in the exercise of ordinary care for his own safety. (c) The only thing in the charge of the court as given, which related to the plaintiff's negligence or his failure to exercise ordinary care, was confined by the language of such charge to the phase of contributory negligence, which concerns itself with the duty of a plaintiff to 'avoid the consequences of the defendant's negligence when it is apparent, or when in the exercise of ordinary care, it should become apparent.' (d) The rule referred to in subparagraph (c) is a separate rule from that which it is claimed the court should have charged the jury in this ground."

Regarding the principles to which the exceptions are made, the court charged as follows: "Gentlemen, a further rule of law to which I call your attention is that the plaintiff himself must be in the exercise of ordinary care to protect himself against any negligence that might have occurred on the part of the defendant; and ordinary care as applied to him has the same definition as that already given you; that is, he must have exercised the degree of care that an ordinarily prudent person would exercise under the same or similar circumstances; and, if the plaintiff, by the exercise of ordinary care, could have avoided the consequences to himself of the defendant's negligence, if there was such, then he would not be entitled to recover. The duty imposed by law upon all persons to exercise ordinary care to avoid the consequences of another's negligence does not arise until the negligence of such other person is shown to be existent, and is either apparent, or circumstances are such as an ordinarily prudent person, under the same or similar circumstances, would have reason to apprehend such negligence, if such negligence was present. If you find that the defendant was negligent in one or more of the ways alleged in the petition, and as the result thereof the plaintiff was injured, and a reasonably prudent man situated as the plaintiff was could not have avoided the injury, you would be authorized to find for the plaintiff on that issue."

We have studied the excerpts from the charge of the court as contained in these special grounds. In our opinion the court

charged the very principles of law on which the defendant assigns error in these two grounds. Code § 105-603, dealing with this question reads: "Diligence of plaintiff.—If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. In other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained." In our opinion the court properly and correctly charged the jury the legal principles applicable and necessary to guide them in the solution of the substantive issues involved. If counsel for the defendant desired more elaborate and more detailed instructions, counsel should have made a written request therefor. *Pollard* v. *Page*, 56 *Ga. App.* 503 (193 S. E. 117).

The defendant contends that the issue of contributory negligence of the plaintiff was made by the pleadings and the evidence. We may assume, without deciding, that this is true. The defendant contends that the question of contributory negligence should have been specifically charged without a request therefor. The defendant calls our attention to *Smith* v. *American Oil Co.*, 77 *Ga. App.* 463 (49 S. E. 2d 90), *Whatley* v. *Henry*, 65 *Ga. App.* 668 (16 S. E. 2d 214), *Central Railroad* v. *Harris*, 76 *Ga.* 501, and *Southern Ry. Co.* v. *Gore*, 128 *Ga.* 627 (58 S. E. 180). We find nothing in those decisions to contravene what we have said hereinabove. Counsel for the defendant contends that the court erred in failing to charge the rule of comparative negligence. We realize that contributory negligence and comparative negligence are so closely related that it is almost impossible to deal with one to the exclusion of the other. Counsel for the defendant realizes this and he states in his brief as follows: "The same rules of law and authorities in support thereof cited under ground 2 next above are applicable here and adopted without repetition." Regarding the argument of counsel as to contributory and comparative negligence our attention is called to *Griggs* v. *Holloway*, 91 *Ga. App.* 333 (85 S. E. 2d 524), and to *Central of Georgia Ry. Co.* v. *Hill*, 21 *Ga. App.* 231 (94 S. E. 50). In the latter case the Court of Appeals quoted Justice Lumpkin's phraseology as set out in *Savannah Electrical Co.* v. *Crawford*, 130 *Ga.* 421, 425 (60 S. E. 1056) as follows: "Where the evidence authorizes a charge on that subject, it is better practice for the presiding judge to give

it." In *Central of Georgia Ry. Co.* v. *Madden*, 135 *Ga.* 205 (7) (69 S. E. 165, 31 L. R. A. (NS) 813, 21 Ann. Cas. 1077), the Supreme Court said: "It is not good practice to omit entirely to give the jury any instructions on the subject of the measure of damages or the diminution of damages which may result from negligence on the part of the person injured even in the absence of requests therefor." In the *Hill* case it was said: "It would have been better in the instant case for the court to have charged the jury on the subject of contributory negligence and apportionment of damages, though the failure to do so would not *alone* constitute reversible error." (Italics ours.) Counsel for the defendant contend. that in the instant case the court in failing to charge without a request, on contributory and comparative negligence, listed the instant case into a situation where it is reversible error, under the pleadings and the evidence herein involved. This contention is founded on the claim that since the verdict was grossly excessive, it did not stand alone on the failure of the court to charge the principles of contributory and comparative negligence. We do not find that we can agree with counsel that the verdict was grossly excessive, as we have stated hereinabove. We think the facts and circumstances, the pleadings and the evidence in the instant case would have authorized a larger verdict. We might here appropriately call attention to the further plea and answer of the defendant as follows: "(a) The occurrence complained of was caused, produced, and brought about directly, proximately and solely by the act of the driver of a pickup truck which was proceeding ahead of defendant's vehicle, in making a sudden effort to stop or drastically slow down for a turn into a driveway without giving a signal, and on account thereof, this defendant is not liable to plaintiff in any sum."

While we are aware that a defendant may file any number of inconsistent defenses, yet the jury might consider each in determining the truth of the transaction. In this view the jury could have found that neither the plaintiff nor the pickup truck was negligent in any manner and concluded that the negligence of the defendant was the sole and proximate cause of the injuries. The allegations and facts briefly reveal that the plaintiff owned a Dodge automobile which he was driving in a southerly direction toward Atlanta on the Buford Highway, being U. S. Highway 23,

on September 25, 1953, at approximately 8 o'clock in the morning; that it was a rainy day and as the plaintiff was operating the Dodge automobile at a rate of 30 to 35 miles per hour, he was approaching a pickup truck and the motor convoy truck of the defendant traveling in the opposite direction in a northerly direction on the said highway with the motor convoy truck to the rear of the pickup truck; that the plaintiff was 60 to 80 feet away before he could see them and, at that distance, as he approached them, he did not see anything out of the ordinary in the way that either of the vehicles was being operated; that at the time the plaintiff was operating his automobile in his own right-hand lane, 2 or 3 feet to the right of the center line of the said highway, and as he reached a point within 15 or 20 feet from the motor convoy truck of the defendant, he saw that the pickup truck was slowing down and the motor convoy truck was coming up apparently too fast to stop in the distance that he had; that he saw the driver of the motor convoy truck start to pull over to the left very quickly, and that is about all the plaintiff remembered; that the collision occurred and the plaintiff was knocked unconscious; that the collision occurred so fast there was nothing the plaintiff could have done to avoid the collision; and that there was nothing to indicate that the driver of the defendant's truck was turning over into the plaintiff's lane of traffic prior to the time the truck turned.

The court did not err in overruling the motion for a new trial for any of the reasons assigned.

*Judgment affirmed. Townsend and Carlisle, JJ., concur.*